UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Rashard Zanders, Lydia Howell, Jill
M. Waite, Communities United
Against Police Brutality, an
association on behalf of its members,
Michelle Gross, Darryl Robinson,
Malcolm Labon, and Trisha Farkarlun,

       Plaintiffs,

                Civ. No. 07-2171 (RHK/JSM)
                **MEMORANDUM OPINION AND**
                **ORDER**

v.

Lori Swanson, in her official capacity
as Attorney General of the State of
Minnesota, and Susan Segal, in her
official capacity as Minneapolis
City Attorney,

       Defendants.

---

Jill Clark, Jill Clark, P.A., Minneapolis, Minnesota, for Plaintiffs.

Lori Swanson, John S. Garry, Minnesota Attorney General's Office, St. Paul, Minnesota, Susan Segal, Sara J. Lathrop, Timothy S. Skarda, Minneapolis City Attorney's Office, Minneapolis, Minnesota, for Defendants.

---

## INTRODUCTION

  Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983 against Defendants Lori Swanson, in her official capacity as Attorney General of the State of Minnesota, and Susan Segal, in her official capacity as Minneapolis City Attorney (collectively,

"Defendants"),[1] alleging that Minnesota Statute § 609.505, subd. 2 (2006) – which criminalizes knowingly making a false report of police misconduct – is unconstitutional. Defendants have moved to dismiss and Plaintiffs have moved for summary judgment. For the reasons set forth below, the Court will grant Defendants' Motion and deny Plaintiffs' Motion.

## BACKGROUND

The relevant facts in this case are undisputed. Plaintiffs challenge a Minnesota statute that makes it a crime to knowingly make a false report of police misconduct. See Minn. Stat. § 609.505, subd. 2 (hereinafter, the "statute").

Plaintiffs Lydia Howell and Richard Zanders are independent journalists. (Am. Compl. ¶ 1a.) In that role, they have written articles about civilian allegations of police misconduct. (Id.) They fear criminal prosecution under the statute because they have or might publish articles about police misconduct. (Id. ¶ 1c.)

Plaintiff Communities United Against Police Brutality ("CUAPB") is a human-rights organization that operates in Minnesota; its members include persons interested in challenging police misconduct and assisting victims of police misconduct. (Id. ¶ 2c.) Plaintiff Michelle Gross is a founding member of CUAPB. (Id. ¶ 3.) Gross is frequently contacted by the media for comment on issues concerning allegations of police misconduct. (Id.) Her speech is often critical of police officers and she believes that "her

---

[1] On July 1, 2008, Plaintiffs voluntarily dismissed Defendant Michael O. Freeman, in his official capacity as Hennepin County Attorney. (Doc. No. 13.)

right to freedom of speech is infringed by fear of criminal prosecution" under the statute. (Id.)

Plaintiff Darryl Robinson asserts that in 2001, two Minneapolis police officers "savagely beat him." (Id. ¶ 4c.) He filed a civil-rights action in federal court and ultimately prevailed in that case. (Id.) Robinson claims that in 2005, while that case was pending, a group of Minneapolis police officers – including one of the defendants in his case – wrongfully arrested him, seized his vehicle, and instigated a false criminal case against him. (Id. ¶ 4d.) Robinson fears criminal prosecution under the statute even if he makes a truthful complaint. (Id. ¶ 4f.)

Plaintiff Malcolm Labon claims that he witnessed a Minneapolis police officer assault an African-American man in his neighborhood. (Id. ¶ 5a.) He asserts that he called 911 and reported the incident. (Id.) A short time later, he claims that police pulled him over, ordered him out of the car, and forcefully kicked him in the head. (Id. ¶ 5b.) Labon made an appointment with the Internal Affairs division of the Minneapolis Police Department to report this incident, but he never kept it because he "became suspicious that somehow things would be turned on him." (Id. ¶ 5d.) Labon fears criminal prosecution under the statute even if he makes a truthful complaint. (Id.)

Plaintiff Jill M. Waite is an attorney who litigates cases in which she makes statements that are either direct accusations of police misconduct or could be interpreted as such. (Id. ¶¶ 6ab-b.) She fears that the broad language of the statute "may be misused against anyone who speaks out against police misconduct, including lawyers who take these kinds of cases." (Id. ¶ 6d.)

3

Plaintiff Trisha Farkarlun alleges that she was forcibly raped by two Minneapolis police officers on July 28, 2007.  (Id. ¶¶ 7a-b.)  She went to the hospital, where she told a nurse what had happened to her.  (Id. ¶ 7b.)  The nurse reported the incident to the Minneapolis Police.  (Id.)  Farkarlun consented to a police interview and told her story to them.  (Id. ¶ 7c.)  On August 1, 2007, she was charged under the statute with the crime of knowingly making a false report of police misconduct.  (Id. ¶ 7b.)  She is currently defending that criminal action in Minnesota state court.  (Id.)  Farkarlun "challenges the constitutionality of the statute under the Constitution of the United States."  (Id.)

Plaintiffs claim that potential prosecutions under the statute deprive them of their First Amendment rights, and their rights to due process and equal protection, in violation of 42 U.S.C. § 1983.  (Id. ¶¶ 13-14.)  Plaintiffs seek a declaratory judgment that the statute is unconstitutional and an injunction preventing Defendants from enforcing the statute.  (Id. ¶¶ 17-18.)

## STANDARD OF DECISION

Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), while Plaintiffs have moved for summary judgment under Federal Rule of Civil Procedure 56.  Therefore, the Court will set forth the standard for evaluating each Motion.

The standard for evaluating a Rule 12(b)(6) motion to dismiss is set forth in Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007).  When a court reviews a motion to dismiss, the complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's

4

favor. Id. at 1964-65.  To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.  While Rule 8 of the Federal Rules of Civil Procedure does not require the pleading of "detailed factual allegations," a plaintiff nevertheless must plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citation omitted).  A complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." Id. at 1968 (citation omitted).  Rather, the facts set forth in the complaint must be sufficient to "nudge[] the[] claims across the line from conceivable to plausible." Id. at 1974.

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist

5

creating a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

As a threshold matter, this Court must first determine whether Plaintiffs have standing to bring this lawsuit.  "[T]he requirement that a litigant have standing to invoke the authority of a federal court is an essential and unchanging part of the case-or-controversy requirement of Article III."  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006) (internal quotations omitted).  While Defendants have not challenged Plaintiffs' standing here, standing is a jurisdictional requirement that "can be raised by the court sua sponte at any time during the litigation."  Pucket v. Hot Springs Sch. Dist. No. 23-2, 526 F.3d 1151, 1157 (8th Cir. 2008) (citation omitted); accord Medalie v. Bayer Corp., 510 F.3d 828, 829 (8th Cir. 2007) (explaining that standing is a "threshold inquiry" and a "jurisdictional prerequisite that must be resolved before reaching the merits of a suit") (citation omitted).  "To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision."  Pucket, 526 F.3d at 1157 (citations omitted).

An "injury in fact" must be more than a "generalized grievance."  United States v. Hays, 515 U.S. 737, 743 (1995).  Indeed, the injury must be "concrete" and "imminent," not "conjectural or hypothetical."  Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000).  It is true that Plaintiffs need not expose themselves to arrest or prosecution in order to have standing to challenge a criminal statute.  Babbitt v. United Farm Workers

6

Nat'l Union, 442 U.S. 289, 298 (1979). But Plaintiffs must still demonstrate that there exists a realistic threat of prosecution under the statute and that they intend to engage in the activity or expression prohibited by the statute. Id. at 298-99.

Here, all Plaintiffs, except for Farkarlun, assert that they have suffered injuries-in-fact because they fear criminal prosecution under the statute if they "cause[] information to be communicated to, a peace officer, whose responsibilities include investigating or reporting police misconduct." (Am. Compl. ¶¶ 1a-6d (quoting Minn. Stat. § 609.505, subd. 2).) In essence, they fear criminal prosecution under the statute for publishing stories about police misconduct or making allegations of police misconduct. But their fear of prosecution under the statute is nothing more than pure speculation and conjecture. In fact, their fears are based only on a partial reading of the statute. A careful reading of their argument demonstrates its lack of merit. The statute does not criminalize the publication, discussion, or allegation of police misconduct; rather, it only criminalizes the reporting of police misconduct "*knowing that the information is false.*" Minn. Stat. § 609.505, subd. 2 (emphasis added). The last point bears repeating. The statute only prohibits the reporting of police misconduct knowing that the report is false. This requirement of scienter protects against prosecuting unintended mistaken reports of police misconduct. And there is no evidence that the statute is being enforced against people who are *not* making *knowingly* false allegations of police misconduct.

Inescapably then, these Plaintiffs have not suffered from an objectively reasonable chilling of their First Amendment right to free expression because they have not demonstrated a credible threat of prosecution under the statute. Nor do they allege that

7

they intend to engage in the expression prohibited by the statute – that is, knowingly making false reports of police misconduct. This is not surprising given that this would inevitably undercut their First Amendment claim that the statute is unconstitutional. Presumably they know that false speech is not protected by the Constitution. See Garrison v. Louisiana, 379 U.S. 64, 75 (1964) ("knowingly false statement[s] . . . do not enjoy constitutional protection"). So they attempt to sidestep this basic principle of constitutional law by arguing that they will not file a truthful complaint of police misconduct because they fear criminal prosecution under the statute, despite the fact that the statute does not criminalize the filing of a truthful complaint of police misconduct. Focused through this lens, it becomes clear that their fear of criminal prosecution is more than just speculative; it is simply a house of cards that cannot withstand scrutiny. At bottom, they cannot show a realistic basis for their fear of prosecution and consequently, they cannot show an injury in fact. Therefore, Plaintiffs Howell, Zanders, Waite, CUAPB, Gross, Robinson, and Labon lack standing to challenge the statute, and their claims must be dismissed. See Babbitt, 442 U.S. at 298 ("[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases.") (citations omitted).

Plaintiff Farkarlun, however, has standing to bring her claim because she has been criminally charged under the statute and a favorable decision would certainly redress her injury. Nevertheless, the Court concludes that it should abstain from hearing her claim pursuant to Younger v. Harris, 401 U.S. 37 (1971). Under the Younger-abstention doctrine, "federal courts should abstain from exercising jurisdiction in cases where

8

equitable relief would interfere with pending state proceedings in a way that offends principles of comity and federalism." Aaron v. Target Corp., 357 F.3d 768, 774 (8th Cir. 2004). The Younger-abstention doctrine "directs federal courts to abstain from hearing cases when (1) there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate opportunity to raise the federal questions presented." Cedar Rapids Cellular Tel., L.P., v. Miller, 280 F.3d 874, 879 (8th Cir. 2002) (citation omitted). "[S]o long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 435 (1982).

Here, Farkarlun is currently involved in a criminal proceeding in Minnesota state court, which implicates important state interests – namely, prohibiting knowingly false reports of police misconduct. And Farkarlun clearly has the opportunity to raise her constitutional challenge to this statute in the criminal proceedings against her. In the Court's view, state court provides a just and adequate venue for Farkarlun to raise her constitutional challenge. Indeed, federal courts "may not engage any presumption 'that the state courts will not safeguard federal constitutional rights.'" Neal v. Wilson, 112 F.3d 351, 357 (8th Cir. 1997) (quoting Middlesex, 457 U.S. at 431). Finally, a decision from this Court at this juncture would interfere with Minnesota's criminal process. Therefore, Farkarlun's challenge to the statute will be dismissed pursuant to the Younger-abstention doctrine.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment (Doc. No. 14) is **DENIED**;

2. Defendants' Motions to Dismiss (Doc. Nos. 3, 6) are **GRANTED**; and

3. The Amended Complaint (Doc. No. 2) is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: August 29, 2008

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge